## MUTUAL BENEFIT HEALTH & ACCIDENT ASS'N v. FRENCH.

### No. 11864.

Court of Civil Appeals of Texas. Dallas.
Feb. 1, 1936.

Rehearing Denied Feb. 29, 1936.

Cleary, Horan & Skutt, of Omaha, Neb., and Burgess, Chrestman & Brundidge, O. A. Fountain, and L. E. Elliott, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

JONES, Chief Justice.

This is a suit instituted in a district court of Dallas county by appellee, Albert French, to recover judgment, because of an alleged accidental injury, on a health and accident insurance policy issued to him by appellant, Mutual Benefit Health & Accident Association. In a trial to a jury, appellee was awarded judgment for damages, on the findings of the jury, in the sum of $2,525 with interest at the rate of 6 per cent. per annum from March 10, 1934, the date of judgment. From this judgment appellee has duly perfected an appeal, and the necessary facts are:

On January 28, 1929, appellee was issued by appellant the health and accident policy in suit, by the terms of which appellee was required to make quarterly payments of $24 each. At the time the policy was issued, appellee paid a premium in the sum of $39, which carried the policy to July 1, 1929, from which date there would be due each three months thereafter a premium of $24. Appellee was residing in the town of Wink, Tex., when the policy was issued, and the application for the insurance was taken by an agent from appellant's Dallas office.

Appellant defaulted in the premium due July 1, 1929, and thereby forfeited his policy. However, on August 2, 1929, he made a quarterly payment of $24, which was accepted by appellant, and the policy reinstated from August 1st, that is, the next quarterly premium would be due November 1, 1929. When the policy was reinstated by the August payment, appellee was residing at Asher, Okl., and the notice in reference to reinstatement of the policy was sent to his former address at Wink, Tex., and forwarded to him at Asher. This payment was made by check to appellant at its office in the city of Dallas, which was its general state office.

Appellee was an oil driller and frequently moved from one oil field to another. Previous to the maturity of the November 1st quarterly dues, appellee had moved his residence to Hebbronville, Tex., and was working as driller in an oil field some few miles from said town. Appellee defaulted in the November 1st payment, and his policy thereby became forfeited. On November 27, 1929, appellant, through the manager of its Oklahoma City branch office, addressed a letter to appellee, reminding him that his policy was forfeited for failure to make the November 1st payment, and after stating why he should reinstate his policy, wrote: "We do not want to see you give this policy up and have a special offer for you. The regular quarterly premium on your policy is $24.00 and if you will forward your remittance for this to us, we will reinstate your policy to March 1, 1930. This gives you a full quarter's protection for this payment." For the convenience of appellee, there was inclosed in this letter a form check and an addressed envelope, and the letter closed with this statement, "All that is necessary for you to do is to fill this check in and return to us and your policy will then be paid to March 1, 1930. Accept this special offer now before you forget it." This letter is signed "Mutual Benefit Health & Accident Ass'n, J. P. Harris, Manager." The last address of appellee in the possession of appellant was Asher, Okl., from which place he had mailed the premium for the August reinstatement of his policy, and this letter was sent to appellee at Asher, Okl. It was forwarded to appellee at Hebbronville, and received by him on Sunday night, December 8, 1929.

Appellee, at this time, had a deposit in the Hebbronville bank, and, on the night of December 8th wrote a check on said bank, payable to appellant in the sum of $24, as an acceptance of the "special offer" made to him in appellant's letter of November 27, 1929, using a blank check of the Hebbronville bank, instead of the form check sent by appellant. This check was inclosed in an envelope addressed to appellant at its Dallas office, the office from which he had received his insurance policy, and the office to which he had sent the August check.

Appellee left home in his automobile for the oil field at approximately 5 a. m. Monday, December 9th, and mailed the letter, inclosing the check, by dropping it in a mailbox immediately in front of the Hebbronville post office. A letter mailed at the time and in the manner appellee mailed his letter would be taken up in the mails about 10 a. m. and sent on its way on a train that passed through Hebbronville for Laredo, Tex., at approximately 11 a. m., and would arrive in Dallas by way of San Antonio at 7:40 a. m. December 10, 1929, and be distributed from the Dallas post office by means of a carrier to the addressee not earlier than 10:30 a. m. nor later than 2 p. m. on the day of December 10th. We find that said letter was delivered to appel-

lant at its Dallas office on December 10, 1929, not later than 2 p. m. This finding is made from the evidence of postal and railway authorities, as to the usual transportation and delivery of a letter mailed in Hebbronville at the time and in the manner this letter was mailed; and also out of deference to the finding of the jury, to the effect that the letter was received in appellant's Dallas office previous to the accidental injury to appellee.

A second check for the sum of $24 on the Hebbronville bank, bearing date of December 9, 1929, and by the post office stamp on the envelope in which the check was mailed, is shown to have been mailed at Hebbronville, Tex., December 12th at 10 a. m., and, by other evidence, is shown to have been received at appellant's Dallas office previous to 2 p. m. December 13, 1929. This check was in the handwriting of appellee's wife, and the signature of appellee on the check was written by his wife, and the letter inclosing it was mailed by her. The check written by appellee's wife appears to have been prepared by filling out the blank form of the check inclosed by appellant to appellee, in the letter of November 27, 1929.

It thus appears that appellant received at Dallas two checks, each intended to pay the $24 premium in conformity to appellant's "special offer" to appellee. On December 17, 1929, appellant acknowledged the receipt of these two checks through its auditor, O. C. Vernon; in the first paragraph of this letter it is stated, " * * * we cannot locate a policyholder by this name at this address, would appreciate it if you would give us more information in regard to your policy"; and further stated, "We also note you filled out the blank check we sent you and we are wondering whether or not you intended to send us two remittances. If not, we will destroy the one you filled out on our blank check," and asked for a quick reply. To this, appellee replied on the bottom of appellant's letter, giving the information requested, and stating, "I mailed one check through mistake, As you already have it just let it apply on next quarter"; and appellee was credited with both payments. At the time this letter was sent by appellant to appellee, appellant did not know of appellee's injury.

On December 10, 1929, not earlier than 3:30 p. m. nor later than 4 p. m., appellee, while at work in the oil field, received a severe injury, consisting of a compound fracture of a leg just above the knee, causing the disability for which appellee claims damages. He was at once removed to the Mercy Hospital in Laredo, where he stayed for some months, and then was removed to another hospital in the city of San Antonio, where he remained for some time. Other necessary facts are given by the jury verdict on the special issues submitted.

In response to the first four special issues submitted, the jury found (1) that appellee sustained bodily injuries on December 10, 1929; (2) that such injuries were sustained through purely accidental means; (3) that such bodily injuries wholly and continuously disabled appellee for a period of 16 months and 25 days; (4) that as a result of said injuries, appellee suffered total loss of time for a period of 16 months and 25 days.

Special issues Nos. 5 and 6 relate to a partial disability following appellee's total disability, and though these issues were found in favor of appellee, no judgment is rendered for such partial disability, and, as no error is assigned by appellee because of the failure or refusal of the court to render judgment on such findings, this issue will not be considered on this appeal. By special issue No. 6a, the jury found that appellee was continuously under the professional care and regular attendance, at least once a week, of a recognized physician and surgeon, for 18 months. The main controversy is in respect to the other special issues, and they are here copied verbatim:

"No. 7: Do you find from a preponderance of the evidence that Albert French deposited in the United States mail at Hebbronville, Texas, envelop containing premium of $24.00 properly addressed to Mutual Benefit Health & Accident Association at its Dallas, Texas, office on the morning of December 9, 1929? Answer Yes or No. Answer: Yes.

"If you have answered Special issue No. 7 by 'yes' then answer this special issue, but if by 'no' you need not answer this special issue:

"No. 8: Do you find from a preponderance of the evidence that prior to mailing said premium of $24.00 that Albert French received through the United States mail the letter from defendant bearing date November 27, 1929, sent from defendant's Oklahoma City office? Answer 'yes' or 'no.' Answer: Yes.

"No. 9: Do you find from a preponderance of the evidence that Albert French deposited in the United States mail the letter, if any, on December 9, containing premium of $24.00, within a reasonable time after he received the letter from defendant bearing date November 27, 1929? Answer 'yes' or 'no.' Answer: Yes.

"No. 10: Do you find from a preponderance of the evidence that Albert French deposited in the United States mail the letter, if any, ·containing said premium of $24.00 within à reasonable time after defendant mailed its letter bearing date November 27, 1929? Answer 'yes' or 'no.' Answer: Yes.

"If you have answered Special Issue No. 7 by 'yes,' then answer this special issue, but if by 'no' you need not answer this special issue.

"No. 11: Do you find from a preponderance of the evidence that Mutual Benefit Health & Accident Association accepted said premium of $24.00, if any, at its Dallas, Texas, office prior to the time that Albert French sustained his injuries, if any, on December 10, 1929? Answer 'yes' or 'no.' Answer: Yes.

"No. 11–A: Do you find from a preponderance of the evidence that J. P. Harris was acting in the apparent scope of his employment as an agent of defendant in writing the letter of November 27, 1929, to plaintiff? Answer 'yes' or 'no.' Answer: Yes.

"No. 12: Do you find and believe from a preponderance of the evidence that the two checks introduced in evidence by the plaintiff were mailed to the defendant in ·the envelop introduced in evidence and received by defendant's branch office on December 13, 1929? Answer 'yes' or 'no.' Answer: No.

"No. 13: Do you find and believe from a preponderance of the evidence that the defendant's Dallas office on December 13, 1929, received the check representing the first premium paid by plaintiff on his policy during that month? Answer 'yes' or 'no.' Answer: No.

"No. 14: Do you find and believe from a preponderance of the evidence that the plaintiff mailed, or caused to be mailed, to defendant at its Dallas office the two checks introduced in evidence, after he was injured on December 10, 1929? Answer 'yes' or 'no.' Answer: No.

"No. 15: Do you find and believe from a preponderance of the evidence that J. P. Harris of Oklahoma City, in the month of November, 1929, as an agent for the defendant, did not have authority from the defendant to accept a premium after it was due and to reinstate a policy effective as of any date other than the date of the acceptance of the renewal premium? Answer by: He did not have the authority, or He did have the authority. Answer: He did have the authority.

"No. 16: Do you find and believe from a preponderance of the evidence that J. P. Harris of Oklahoma City did not have authority to waive any of the provisions of plaintiff's policy during the year 1929? Answer by: He did not have the authority, or He did have the authority. Answer: He did have the authority."

All findings on the special issues are sustained by substantial evidence, and are adopted as the findings of this court.

Appellant's main contention is that, appellee's policy had been forfeited by failure ·to pay the premium by November 1, 1929, and the policy had not been reinstated prior to the injury. This contention is based on the provisions of section 3 under the heading "Standard Provisions" of the policy; such section reads: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the Association, or any of its duly authorized agents, shall reinstate the policy, but only to cover accidental injury thereafter sustained, and such sickness as may begin more than ten days after the date of such reinstatement."

Appellant contends, under the undisputed evidence, that the premium sent in the form of a check by appellee was not accepted until some time after the injury had been received, hence, under the very terms of said section 3, above quoted, reinstatement of policy did not include this injury, received on the afternoon of December 10, 1929, and prior to acceptance of the check. Appellant bases this claim· of antecedent injury, in part, on the testimony of the auditor of its Dallas office, to whom delivery by the mailing clerk of checks received from policyholders, in payment of premiums, is made; that on December 13th the two checks, one mailed by appellee of date December 8th, and the other mailed by his wife of date December 9th, were received by such auditor from the mailing clerk who opens the mail and sends it to the proper

departments, under a rule of the office, always preserves the envelopes in which checks are received, after the first of the month; that these envelopes are placed in a file, and only the envelope received December 13th and stamped as being mailed from Hebbronville December 12th, could be found in such files; hence it concludes that the two checks came to appellant's Dallas office at the same time and inclosed in the same envelope, otherwise there would have been two envelopes on file.

The issue as to whether the two checks were inclosed in the same envelope and received by appellant at its Dallas office December 13th, was submitted to the jury by special issue No. 12, and a verdict rendered contrary to appellant's contention. There is direct as well as circumstantial evidence supporting this finding of the jury. There is the positive evidence of appellee that the check he sent was made out by him, not on the form check sent by appellant, but on a blank check on the Hebbronville bank, and that he mailed same at 5 on the morning of December 9th. The check made by Mrs. French, bearing date of December 9th, is shown by the stamp on the envelope to have been mailed at Hebbronville on the morning of December 12th. While she is positive she mailed the letter containing the said check, she does not remember when, and is positive that she did not inclose in the letter the other check. Mrs. French explained her lack of memory as being due to the extremely worried condition she was in at the time, because of the severe injury to her husband on December 10th, of which she received notice on that evening. She testifies also that she did not know her husband had sent the other check. While it is possible that the wife could have mailed the two checks in the same envelope, yet it is highly improbable that she would have prepared and sent another check, had she known that her husband had already sent one.

It is also contended that the husband's check could not be accepted in payment of the premium until it had at least come into the possession of the auditor, who passed on such matters, and that as it had not come into his possession, under his evidence, until December 13th, its acceptance, as the payment for reinstatement of the policy, could not have occurred before that date. The "special offer" which appellee acted under was to the effect that "All that is necessary for you to do is to fill this check in and return to us and your policy will then be paid to March 1, 1930." In other words, when a check, good for the amount of the premium, was delivered at appellant's Dallas office, the policy under such "special offer" would be automatically reinstated. It must be remembered that all payments on premiums by appellee had been made by checks, and these checks had been accepted by appellant; acting on this, the "special offer" contained a request, not that actual money be paid, or a post office money order be sent, or a bill of exchange for the amount be sent, but that your check be sent. Appellee's August reinstatement had been consummated by the simple sending of the requested check.

It is further contended that appellant's letter of November 27th, submitting the "special offer" of reinstatement, was sent from the Oklahoma City office and necessarily contemplated that the check for reinstatement should be sent to such office. To this contention we cannot agree. While the letter was signed, as are all of the instruments prepared by appellant corporation, by an agent, it was not the letter of the agent Harris, nor did it purport to be his letter. Hence, it was not his individual proposition, but was the proposition of appellant, given through its manager of the Oklahoma City office. The condition of reinstatement could be met by mailing the check to appellant, either to the Dallas or Oklahoma City office, or to the general office at Omaha, Neb. The condition stated was that a check be sent to appellant.

To our minds, it is reasonably clear from the facts and circumstances in evidence that this letter of November 27th was inspired by the home office at Omaha. The evidence shows that the policy was written by virtue of an application out of the Dallas office; that the Dallas office had received the reinstatement premium of August 2d, but which was sent by check from Asher, Okl., which was the then residence of appellee. This letter of November 27th was addressed to the last-known address appellant had of appellee, and its opening sentence is: "In checking over our list, we note that you are one of the few who did not pay the premium which was due on their policies November 1st, and needless to say we regret this very much, as losing an old policyholder is like losing an old friend." So far as this record shows, this checking over could only have been done, either by the Dallas office, or by the gen-

920

eral office at Omaha, because the record is silent of any business transactions between appellee and the Oklahoma City office prior to this letter. Because appellee's last-known address was in the state of Oklahoma, this "special offer" was directed by the Omaha office, to come from the Oklahoma office. No other conclusion will fit the facts.

It is further contended that the only power that Harris, writer of the letter containing the "special offer," could have to reinstate the policy was under the terms of said section 3, above quoted, that is, the payment of the premium had to be accepted before the reinstatement could be consummated. The "special offer" made by appellant through its Oklahoma office, in the letter of November 27th, does not purport to be reinstatement under any specific terms of the policy. Otherwise, it would not be a "special offer," but would be an offer open to every policyholder that had defaulted in his payment. When the reinstatement was consummated by appellee, according to the terms of the letter, the only question is, Did the writer of the letter have the power to make such "special offer," or was he acting in the apparent scope of his employment when he did make such "special offer"? This issue was submitted to the jury in special issue No. 11–A, and found adversely to appellant. Under the above statement of evidence and our conclusion therefrom, this finding is clearly supported by substantial evidence.

We believe the following authorities amply support the conclusions herein announced: American Nat. Ins. Co. v. Cleveland (Tex.Com.App.) 86 S.W.(2d) 217; U. S. Fidelity & Guaranty Co. v. Taylor (Tex.Civ.App.) 11 S.W.(2d) 340; Niagara Ins. Co. v. Lee, 73 Tex. 641, 11 S. W. 1024; Morrison v. Insurance Co., 69 Tex. 353, 6 S.W. 605, 5 Am.St.Rep. 63; Wagner & Chabot v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S.W. 569; Law v. Texas State Mutual Fire Ins. Co. (Tex. Com.App.) 12 S.W.(2d) 539; American Nat. Ins. Co. v. Callahan (Tex.Com.App.) 81 S.W.(2d) 504; Postal Indemnity Co. v. Rutherford (Tex.Civ.App.) 49 S.W.(2d) 1115; Home Benefit Ass'n of Brazos County v. Catchings (Tex.Civ.App.) 38 S. W.(2d) 386; Phœnix Furniture Co. v. Kay (Tex.Civ.App.) 10 S.W.(2d) 422.

We have examined all other assignments of error, not herein specifically discussed, with the result that we find no reversible error in any of them. It necessarily follows that, in our opinion, this case should be affirmed, and it is so ordered.

Affirmed.